**John R. TAYLOR, Jr., Plaintiff–
Appellant,**

v.

**Ernest McDUFFIE; Ronnie Lovick,
Defendants–Appellees.**

No. 94–6808.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1998.

Decided Sept. 3, 1998.

**ARGUED:** Neal Lawrence Walters, Supervising Attorney, William R. McDonald, Third Year Law Student, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Catherine Ricks Piwowarski, Ward & Smith, P.A., New Bern, North Carolina, for Appellees. **ON BRIEF:** Raymond Krncevic, Third Year Law Student, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Kenneth R. Wooten, Ward & Smith, P.A., New Bern, North Carolina, for Appellees.

Before MURNAGHAN and WILLIAMS, Circuit Judges, and BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the majority opinion, in which Judge BROADWATER joined. Judge MURNAGHAN wrote a dissenting opinion.

## OPINION

WILLIAMS, Circuit Judge:

John R. Taylor, Jr., a North Carolina prisoner, filed this § 1983 action alleging that Officer Ronnie Lovick and Deputy Ernest McDuffie (Defendants) used excessive force against him while he awaited his initial appearance before a local magistrate.[1] In his complaint, Taylor sought compensatory and punitive damages in the amount of $20 million. The district court granted Defendants' motion for summary judgment based on its conclusion that Defendants were entitled to qualified immunity.[2] Because any injuries Taylor may have suffered were de minimis, we affirm.

### I.

In the early morning hours of July 4, 1990, Officer H.E. Dombrowsky observed a van traveling south in the northbound lane of a city street, with Taylor running alongside of it, beating on its side, and yelling at the driver. Taylor was arrested for drunk and disorderly conduct. Darsilene J. Cabbagestalk, his girlfriend, was arrested for driving under the influence. Officer Dombrowsky transported Ms. Cabbagestalk to the State Highway Patrol Office for a breathalyzer test. Officer Lovick, who was called as backup, transported Taylor to the Craven County Jail for booking and appearance before a magistrate.[3]

1. Although Taylor filed this § 1983 action pro se, North Carolina Prisoner Legal Services represented him in the district court. The University of Virginia Appellate Litigation Clinic ably represented Taylor before this Court.

2. The district court also denied relief on Taylor's claim that Defendants exhibited deliberate indifference to his serious medical needs, finding that Taylor's injuries were not sufficiently serious. In addition, the district court held that Defendants' employers could not be held liable, finding that respondeat superior is inapplicable to § 1983 actions. Taylor does not challenge these rulings on appeal. *See Canady v. Crestar Mortgage Corp.,* 109 F.3d 969, 973 (4th Cir.1997) (holding that issues not briefed are deemed waived on appeal).

3. The charges against Taylor eventually were dropped because he received life plus forty years imprisonment on an unrelated first-degree murder conviction.

Upon arrival at the Craven County Jail, Taylor was immediately brought to the magistrate's office for processing. While in the lobby of the magistrate's office, Officer Lovick recovered two identification cards from Taylor. One belonged to Taylor, and the other belonged to Ms. Cabbagestalk. In addition, Officer Lovick recovered a four-inch long file blade from Taylor. All three items were placed on the counter in the lobby of the magistrate's office.

Meanwhile, at the State Highway Patrol Office, Ms. Cabbagestalk refused to cooperate with the trooper administering the breathalyzer test. Of particular importance here, she refused to tell the trooper her name. As a result, the trooper called Officer Lovick at the magistrate's office to see if he knew her name. When Officer Lovick asked Taylor for Ms. Cabbagestalk's name, Taylor refused to reveal it to him.

At this point, Taylor's version of events differs substantially from Defendants'. Taylor alleges that Officer Lovick became upset when Taylor refused to provide his girlfriend's name and driver's license, which he admits was in his possession.[4] Specifically, Taylor contends that Officer Lovick grabbed him by the collar, pointed his gun at him, and demanded that he turn over his girlfriend's license or he would "blow [his] brains out." (J.A. at 14.) Taylor claims that when he still refused, Officer Lovick threw him to the floor face first, jumped on his back, and searched his pockets. When Officer Lovick could not find the license—which Taylor concedes was in his mouth—Taylor contends that he was hit on the back of his head and punched in the ribs.

After he was moved from the magistrate's office to the booking area, Taylor alleges that Deputy McDuffie assisted Officer Lovick in beating him. In particular, Taylor asserts that in an effort to retrieve the license from his mouth, Deputy McDuffie placed his knee in the lower part of Taylor's back and at the same time grabbed Taylor by the head and started pulling his head backwards until his back popped. Taylor also claims that Deputy McDuffie shoved a small wooden object into Taylor's nose with such force that it caused his nose to hemorrhage and then shoved it into Taylor's mouth with such force that it cracked his tooth.[5]

Defendants, however, related a very different version of events. According to Officer Lovick, when Taylor refused to reveal his girlfriend's name, he simply walked toward the counter to retrieve the license. In response, Taylor knocked him against the wall, grabbed the license, and appeared to put it in his pants pocket. Officer Lovick claimed that Taylor fought with him to prevent Lovick from getting the license, grabbed the file blade from the counter, and threatened him. When Officer Lovick drew his weapon, Taylor dropped the file blade and placed the license in his mouth. According to Deputy McDuffie, he and other officers assisted Officer Lovick in restraining Taylor. Because Taylor continued to fight, the officers placed leg irons on him before taking him to the booking area.

In the booking area, Defendants contend that Taylor violently resisted the officers' attempt to remove the license from his mouth. Fearing that Taylor would mutilate or swallow the license or hurt himself with it in his mouth, Officer Lovick used a kubaton to apply pressure under Taylor's nose to get him to release the license, and McDuffie applied pressure with his fingers behind Taylor's ears to get him to open his mouth. Defendants eventually removed the license from Taylor's mouth, removed the handcuffs and leg irons, and placed him in a holding cell. The magistrate released Taylor about three hours after the incident. Nine hours after his release, Taylor went to the Craven Regional Medical Center where he was X-rayed and treated for cuts and bruises.

Defendants answered the complaint and moved for summary judgment. With their motion for summary judgment, Defendants

---

4. At some point, presumably while Officer Lovick was on the phone with the trooper at the State Highway Patrol Office, Taylor admits that he reobtained Ms. Cabbagestalk's identification card.

5. Officer Lovick stated in an internal investigation report that he, and not Deputy McDuffie, used the kubaton on Taylor.

submitted Taylor's medical records, which disclosed that Taylor received abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs, and some excoriation of the mucous membranes of the mouth. No scalp lesions, bone fractures, swelling in the tissue around the spinal column, cracked teeth, or injuries to his nose were found.

Taylor was sent a notice of Defendant's motion for summary judgment pursuant to *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975). In response, Taylor filed an affidavit from Nelson Bryant, a detainee who claims to have witnessed the altercation that occurred in the jail's booking area.[6] Bryant stated that during the time Taylor was on the floor in the booking area, one officer had his knee on Taylor's back, and another pulled his head back, while a third officer jabbed a stick into Taylor's mouth. Bryant saw a plastic card in Taylor's mouth. After the officers removed the card from Taylor's mouth, Bryant claimed that the officer continued to jab the kubaton into Taylor's mouth. Bryant stated that Taylor's face was swollen and bloody. Defendants, however, submitted affidavits stating that Bryant was not in the booking area on July 4 and, therefore, could not have witnessed the incident with Taylor.

The district court analyzed Taylor's excessive force claim under the Fourth Amendment and granted Defendants' motion for summary judgment on qualified immunity grounds. The district court concluded that Taylor's evidence was ambiguous because it failed to support his version of the events and that Taylor's medical records did not support his account of the injuries he allegedly sustained because "[he] had no serious cuts or wounds at all." (J.A. at 172.) The district court found that Defendants submitted numerous affidavits supporting their version of the events and opposing Taylor's "conclusory and unsupported allegations." (J.A. at 172.) The district court stated that "[g]iven this state of facts, no rational trier of fact could find that the conduct of defendants was objectively unreasonable, or even that

the force used in this instance was excessive." (J.A. at 172.) This appeal followed.

## II.

On appeal, Taylor contends that he introduced sufficient evidence to establish that Defendants used excessive force in subduing him and that no reasonable officer would consider Defendants' conduct to be lawful. As a result, he argues that the district court erred in granting Defendants summary judgment on qualified immunity grounds. We review de novo the district court's decision to grant Defendants summary judgment. *See Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 196 (4th Cir.1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"In addressing an excessive force claim brought under § 1983, [our] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The district court analyzed Taylor's excessive force claim under the Fourth Amendment. Although the Second, Sixth, and Ninth Circuits analyze similar claims under the Fourth Amendment, *see Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989) ("Fourth Amendment standard probably should be applied at least to the

---

**6.** The district court also granted Taylor's request for additional time in which to file a supplemental response to Defendants' summary judgment motion, but Taylor never did so.

period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer"); *McDowell v. Rogers,* 863 F.2d 1302, 1306 (6th Cir.1988) (Fourth Amendment seizure "continues throughout the time the person remains in the custody of the arresting officers"); *Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir.1985) ("[O]nce a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers."), we recently joined the Fifth, Seventh, and Eleventh Circuits in holding that the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." *Riley v. Dorton,* 115 F.3d 1159, 1164 (4th Cir.1997) (en banc) (citing with approval *Brothers v. Klevenhagen,* 28 F.3d 452, 456 (5th Cir.1994); *Wilkins v. May,* 872 F.2d 190, 192 (7th Cir.1989); *Reed v. City of Chicago,* 77 F.3d 1049, 1052 n. 3 (7th Cir.1996); and *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir.1996)). Instead, "we conclud[ed] that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 1166.

■ To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, Taylor must show that Defendants "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21, 106 S.Ct. 1078 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). Since Taylor concedes, as he must, that Defendants were entitled to use force to retrieve Ms. Cabbagestalk's license from his mouth, his claim of excessive force turns on whether Defendants behaved "maliciously" or "sadistically" *after* Taylor relinquished the identification card.

Taylor contends that his version of events diametrically contradicts that offered by Defendants on such issues as where the assault took place, how much force was used, and how much he resisted. In particular, Taylor

points to the affidavit of Bryant, which states that Defendants jabbed the kubaton into Taylor's mouth eight to ten times after Taylor relinquished the identification card. Because the parties' competing affidavits disclose a genuine issue of material fact as to what actually happened at the magistrate's office, Taylor argues that summary judgment on qualified immunity grounds was inappropriate. *See, e.g., Rainey v. Conerly,* 973 F.2d 321, 324 (4th Cir.1992) (finding that district court properly denied defendant's immunity-based summary judgment motion because "a determination of what actually happened is absolutely necessary to decide whether[defendant] could reasonably have believed that his actions were lawful"); *Gray v. Spillman,* 925 F.2d 90, 95 (4th Cir.1991) (finding summary judgment precluded where resolution of claim depends on credibility determination).

Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force had subsided, Taylor has failed to show that his injuries resulting from such force are more than *de minimis. See Riley,* 115 F.3d at 1166 (holding that a plaintiff cannot prevail on a § 1983 excessive force claim if his injury is *de minimis* ). Because Taylor failed to establish an element essential to his case, the district court did not err in granting Defendants' motion for summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (noting that Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

■ In *Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994) (en banc), we held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis.*" *Id.* at 1263 (citing *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Extraordinary circumstances are present when "the force used [is] of a sort repugnant to the conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." *Id.* at 1263

n. 4 (internal citations and quotation marks omitted). In *Riley*, we extended the holding of *Norman* to excessive force claims brought by pretrial detainees. *See Riley*, 115 F.3d at 1166.[7] The plaintiff in *Riley*, a pretrial detainee awaiting booking at the police station, complained that he experienced pain when defendant handcuffed him too tightly, that he feared for his safety after defendant placed the tip of a pen in his nose and threatened to rip it open, that he sustained a welt on his face after defendant slapped him, and that he suffered from depression and nightmares as a result of defendant's treatment of him. *See id.* at 1167. We concluded that plaintiff's injuries were *de minimis*, noting that the record "fail[ed] to bear out Riley's allegation of injury." *Id.*

Like the plaintiff in *Riley*, Taylor's medical records do not support the injuries he purports to have received after he allegedly relinquished the identification card. According to Bryant's affidavit, Defendants jabbed a kubaton into Taylor's nose and mouth about eight to ten times after Taylor relinquished the identification card. According to Taylor's medical records, however, doctors found "no injuries" to his nose. (J.A. at 108.) Similarly, the injuries to Taylor's mouth were either nonexistent or clearly *de minimis*. For example, there is absolutely no evidence in the medical records that Defendants cracked Taylor's tooth when they forced the kubaton into his mouth. Rather, emergency room personnel described Taylor as having slight swelling in the jaw area, and some irritation of the mucous membranes of the

mouth. Under the standard set forth in *Riley*, these injuries are clearly *de minimis*. Indeed, temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*. *See, e.g., Norman*, 25 F.3d at 1263–64 (holding that a swollen thumb was *de minimis* ). In any event, the slight swelling in Taylor's jaw and the irritation of the mucous membranes on one side of his mouth is entirely consistent with the force that was necessary to retrieve the license from his mouth. In sum, Taylor failed to create a genuine issue of material fact regarding any more than *de minimis* injury resulting from the alleged use of force on the part of Defendants after he relinquished the identification card.

We also note that Taylor's alleged injuries resulting from the use of force on the part of Defendants *prior* to his relinquishing the identification card were either nonexistent or *de minimis*.[8] For instance, Taylor claims that Deputy McDuffie placed a knee in Taylor's back and then pulled his head back until his back popped. Taylor's medical records, however, failed to reveal any swelling around his spinal column. Taylor also alleges that he suffered numerous blows to the back of the head. In contrast, the physician who treated Taylor found "no scalp lesions." (J.A. at 108.) Although emergency room personnel did diagnose Taylor with "abrasions about the wrists and the ankles," and tenderness over some ribs, theses injuries are clearly *de minimis*. In fact, the abrasions on Taylor's wrists and ankles were caused by his handcuffs and leg irons. ·

---

7. The dissent's contention that *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (en banc), and *Riley v. Dorton*, 115 F.3d 1159 (4th Cir.1997) (en banc), were wrongly decided need not detain us long. *See post* at 485–86 ("I remain convinced that *Norman* was wrongly decided, and I am compelled to dissent once again on that basis"). "It is well established that a decision of this Court is binding on other panels unless it is overruled by a subsequent en banc opinion of the Court or an intervening decision of the United States Supreme Court." *Smith v. Moore*, 137 F.3d 808, 821 (4th Cir.1998) (citing *Industrial Turnaround Corp. v. NLRB*, 115 F.3d 248, 254 (4th Cir.1997)). The holdings in *Norman* and *Riley* have not been called into question by the en banc Court. Indeed, both opinions were decided by the en banc court. Similarly, neither opinion has been called into question, much less over-

ruled, by an intervening decision of the Supreme Court. As a consequence, *Norman* and *Riley* continue to be the binding law of this Circuit.

8. Interestingly, although conceding that force was justified to retrieve the identification card from Taylor's mouth, *see post* at 487–88, the dissent uses the injuries resulting from that force to bolster its finding that Defendants' conduct after the removal of the identification card constituted excessive force, *see post* at 487 (noting abrasions to wrists and ankle, swelling of the tricep, and soreness of the ribs and thigh). The *only* force alleged after Taylor relinquished the identification card involved the "jabbing" of a kubaton into Taylor's nose and mouth. We are hard pressed to understand how such force led to the injuries cited by the dissent.

Although Taylor now claims that he was in excruciating pain, he did not seek medical treatment for at least twelve hours after the incident with Defendants. Moreover, no medical treatment was required or prescribed for any of his injuries. On these facts, no reasonable jury could conclude that Taylor's injuries were more than *de minimis*. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (holding that summary judgment is appropriate "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party"). Accordingly, the district court did not err in granting Defendants' motion for summary judgment.[9]

### III.

For the reasons stated above, the judgment of the district court is affirmed.

*AFFIRMED.*

MURNAGHAN, Circuit Judge, dissenting:

Four years ago, in *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (en banc), a majority of this Court held that a plaintiff cannot sustain a § 1983 action for the use of excessive force where the plaintiff's injuries are *de minimis*. I dissented from that holding, along with three other judges, because I believed it was based on a patent misreading of the Supreme Court's decision in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and because it represented an unacceptable curtailment of an inmate's right to be free from the use of excessive force by police officers. Today, I remain convinced that *Norman* was wrongly decided, and I am compelled to dissent once again on that basis. I also dissent because, even accepting *Norman* as the established law of our circuit, I cannot agree that summary

judgment was proper on the facts presented in this case.

### I.

In *Hudson*, the Supreme Court held that the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force...." 503 U.S. at 9–10, 112 S.Ct. 995. The Fourth Circuit later held that the *de minimis* force rule applies equally to claims of excessive force brought by pretrial detainees under the Fourteenth Amendment. *See Riley v. Dorton*, 115 F.3d 1159, 1166–67 (4th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 631, 139 L.Ed.2d 611 (1997).

In *Norman*, this Court embarked upon an unjustified extension of the *Hudson de minimis force* rule to exclude from constitutional protection all claims of excessive force that do not result in more than *de minimis injury*. *See* 25 F.3d at 1262. The majority held that "[w]hile [*Hudson* ] ... excepted from the Eighth Amendment only *de minimis* uses of force, it seemed to affirm by negative implication one sentence later that *de minimis* injury can serve as *conclusive evidence* that *de minimis* force was used...." * *Id.* (emphasis added). I believed then, as I do now, that the majority's "negative implication" was drawn in direct conflict with the express language of *Hudson*.

The Court in *Hudson* recognized that the ultimate issue to be decided in the excessive force inquiry is whether the degree of force employed by the officers was justified under the circumstances. *See* 503 U.S. at 6–7, 112 S.Ct. 995. With that in mind, the Court explained in no uncertain terms that the degree of injury suffered by the plaintiff is only one of many relevant factors:

> to render the force unconstitutional regardless of injury, *id.*

---

9. The dissent also contends that even if "Taylor's injuries were *de minimis*," Bryant's affidavit created a genuine issue of material fact with respect to whether the officers "conduct [was] repugnant to the conscience of mankind." *See post* at 15 (internal quotation marks omitted). Although the *de minimis* rule does not apply to conduct "repugnant to the conscience of mankind," *Hudson v. McMillian*, 503 U.S. 1, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), we have little difficulty concluding that the conduct alleged in Bryant's affidavit was not so "diabolic" or "inhuman" as

* The sentences from which the majority drew the alleged "negative implication" state as follows: "[T]he blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes. The extent of Hudson's injuries thus provides no basis for dismissal of his § 1983 claim." *Hudson*, 503 U.S. at 10, 112 S.Ct. 995.

[T]he extent of injury suffered by an inmate is *one factor* that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.*

*Id.* at 7, 112 S.Ct. 995 (internal citations omitted) (emphasis added). In light of this admonishment, the majority's "negative implication" in *Norman* was clearly unjustified, for nothing in *Hudson* can be remotely interpreted to imply that the extent of injury is ever "conclusive" on the question of whether excessive force was used.

Given the error of our holding in *Norman*, it is not surprising that our circuit stands alone among all other courts of appeal in holding that *de minimis injury*, without more, is dispositive of an excessive *force* claim. Vigilantly adhering to *Hudson*, other courts of appeal have consistently held that the degree of injury is but one of many relevant factors. *See, e.g., Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir.1996) (holding that although "some injury" is required, "the extent of injury suffered by a [plaintiff] is *one factor* that may suggest whether the use of force" was excessive under the circumstances) (emphasis added) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997) ("[A]nalysis of an ... excessive force claim is contextual and requires that *many factors* be considered: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful

response ....' ") (emphasis added) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995); *Davidson v. Flynn*, 32 F.3d 27, 29 n. 1 (2d Cir.1994) ("[T]he seriousness of the injury is *'relevant* to the [excessive force] inquiry, but does not end it.' ") (emphasis added) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995); *White v. Holmes*, 21 F.3d 277, 281 (8th Cir.1994) ("The extent of injury 'is a *relevant factor* as to whether or not the punishment inflicted was [excessive].' ") (emphasis added) (quoting *Cummings v. Malone*, 995 F.2d 817, 822–23 (8th Cir.1993)); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir.1994) ("[T]he degree of injury is *relevant* to determining 'whether the use of force could plausibly have been thought necessary' in a particular situation ....") (emphasis added) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995).

The present case is indicative of the unacceptable results achieved when a finding of *de minimis* injury is considered dispositive of the excessive force inquiry. Relying on *Norman*, the majority holds that a claim of excessive force cannot survive summary judgment where the plaintiff's injuries are *de minimis, regardless of whether excessive force was actually employed by the officers.* With full faith in the fiction that *de minimis* injury means *de minimis* force, the majority's analysis does not even address the possibility that excessive force may have been used against Taylor despite the lack of any outward signs of serious injury. Yet, it is certainly not difficult to imagine circumstances where the excessive use of force might result in no serious, visible injury to the plaintiff. For example, imagine an inmate who, although thrown from a prison balcony, is fortunate to incur only minor scrapes and bruises. Or imagine an inmate who, although beaten intensely in the stomach, back, chest, or groin, displays no greater outward signs of physical injury than that which the majority terms "temporary swelling." While the extent of the plaintiff's injuries in such cases is obviously relevant to damages, the fact that such injuries are less than severe does not answer the ultimate question of whether the force used was justified under the circumstances.

*Hudson,* of course, recognized as much. In rejecting the Fifth Circuit's attempt to impose a "significant injury" requirement on excessive force claims, the Court put to rest any notion that an excessive force claim should rise or fall with the severity of the plaintiff's injuries:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency *always* are violated. This is true whether or not significant injury is evident. *Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.* Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

*Hudson,* 503 U.S. at 9, 112 S.Ct. 995 (internal citations omitted) (emphasis added). Yet, the law in this circuit is clearly to the contrary. As the majority's opinion makes clear, officers in our circuit are free to use excessive or unjustified force against inmates, so long as they are careful or fortunate enough to leave only minor traces of their blows.

I expect that soon the Supreme Court will place the Fourth Circuit back on the course intended by *Hudson.* Until that day, I fear the injustice that awaits pretrial detainees in our nation's jails.

## II.

Despite my belief that *Norman* was wrongly decided, I recognize that, in the absence of a contrary en banc decision or Supreme Court clarification, I am bound to apply the law as it has been articulated in this circuit. Even applying that law, however, I disagree with the majority's conclusion that summary judgment is appropriate.

As an initial matter, the record reveals that Taylor's injuries were more than *de minimis.* As his medical records demonstrate, Taylor suffered abrasions of the ankles, wrists, and inner mouth, swelling of the tricep, face, and lower jaw. The examining doctor observed that Taylor limped visibly from pain in his left thigh. In addition, Taylor's medical reports confirm that he complained of nausea, diffuse pain over his entire neck area, soreness of the ribs, as well as pain in his head, jaw, thorax, wrists, and ankles. Although Taylor's injuries were certainly not severe or permanently debilitating, we have held that such injuries are not required. *See Riley,* 115 F.3d at 1167 ("An injury need not be severe or permanent to be actionable. . . ."). Moreover, Taylor's injuries are at least comparable to those the Supreme Court held not to be *de minimis* in *Hudson. See* 503 U.S. at 4, 112 S.Ct. 995 (reversing summary judgment where plaintiff suffered "minor bruises and swelling of [the] face, mouth and lip," as well as several loosened teeth and a cracked partial denture).

In light of the medical evidence submitted by Taylor, I believe a genuine issue of material fact remains with respect to the severity of Taylor's injuries. While a jury might ultimately conclude that Taylor's injuries were *de minimis,* I cannot agree that such a conclusion is compelled as a matter of law on the record presented in this case. To hold otherwise is to revert back to the "significant injury" requirement explicitly rejected by *Hudson. See id.* at 9, 112 S.Ct. 995.

Finally, even assuming for the sake of argument that Taylor's injuries were *de minimis,* we have previously held that the *de minimis* rule does not apply to conduct "repugnant to the conscience of mankind. . . ." *Norman,* 25 F.3d at 1263 n. 4 (quoting *Hudson,* 503 U.S. at 10, 112 S.Ct. 995); *see also Hudson,* 503 U.S. at 9, 112 S.Ct. 995 ("[I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment].") (quoting *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1878)). Here, while I agree that the use of force was justified to the extent necessary to retrieve the identification card and bring Taylor under the officers' control, I believe Nelson Bryant's affidavit creates a genuine issue of material fact with respect to whether the officers behaved maliciously or sadistically *after* the need for force had subsided. According to Bryant, even after Taylor relinquished the identification card, "the officer with the [kubaton] continued to jab it into Taylor's mouth repeatedly, *eight to ten more times,*" at which point Bryant could see blood on Taylor's swollen face and "could hear Taylor say the officers were hurting him."

The majority offers no analysis to support its conclusion, stated in a footnote, that the continued use of a kubaton against Taylor—who was by then handcuffed face-down on the floor, had relinquished the identification card, and was no longer resisting the officers—was not "diabolic" or "inhuman." Yet a jury, when faced with Nelson Bryant's testimony, could certainly conclude otherwise. *See King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980) (holding use of force excessive on similar facts) ("We can only infer pure malice or personal antipathy because aside from them we can conceive of no motivation for the blows that fell after [the plaintiff] was pinned to the floor."). The existence of that factual dispute makes summary judgment improper. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

I dissent.