**Gregory MARSHALL, Plaintiff,**

v.

**Linda ODOM, Lieutenant, et al., Defendants.**

**No. CIV. A. AW–99–145.**

United States District Court, D. Maryland, Southern Division.

July 18, 2001.

Mark T. Foley, Sasscer, Clagett & Bucher, Upper Marlboro, MD, for plaintiff.

J. Joseph Curran, Jr., Sharon Stanley Street, Angela M. Eaves, Office of Atty. General, Baltimore, MD, for defendants.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Gregory Marshall, brings this prisoner civil rights action against Correctional Officers Linda Odom, David Bazemore, Alan Carlton, Darrold Johnson, Richard Thomas, Rondal Tindal, Carlareese Hunter, and Wanda Hill. The complaint asserts violations of the Eighth Amendment's prohibition on the use of excessive force under 42 U.S.C. § 1983, malicious prosecution, and civil conspiracy. Currently pending before the Court is Defendants' Motion for Summary Judgment [75-1]. The motion has been fully briefed by all parties. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the respective motions, the Court makes the following determinations.

### I. FACTUAL BACKGROUND

On May 22, 1997, Plaintiff was banging a steel drawer against the bars of his cell door. The steel drawer slipped out of his hand and Plaintiff sustained a cut to his arm.[1] Apparently attracted by the noise, correctional officers approached Plaintiff's cell. Upon noticing his injury, the officers informed Plaintiff that they needed to treat his arm. Plaintiff responded that he did not want his arm treated. After he refused medical attention, a utility squad, including Officers Bazemore, Carlton, Johnson, Thomas, Tindal, Hunter, and Hill, was dispatched to forcibly extract Plaintiff from his cell for medical attention. The squad removed Plaintiff from his cell, handcuffed him, and treated the wound. The officers then began to transport Plaintiff to the medical unit.

During the transport, Plaintiff alleges that, as the escort approached a doorway called "the grill," a correctional officer stepped in front of him. Plaintiff accidently tripped over the officer's foot and fell toward Officer Hunter who was standing in front of the grill. As he and the other officer started to fall, Plaintiff maintains that Officer Hunter struck him in the head with her keys. Thereafter, the escorting officers kicked and beat him while he lay on the ground. ·After the attack ended, the officers picked up Plaintiff and took him to the medical unit. The officers informed Officer Odom that Plaintiff assaulted a correctional officer. Officer Odom repeated the allegation of assault to the medical staff. Thereafter, Plaintiff was placed in a cell and restrained face down by four-point restraints. The medical personnel administered a sedative to Plaintiff without his consent. As a result of the incident, Plaintiff suffered from a headache, an abrasion on his face, and swelling knots on his head, arms, back, and legs. While these injuries have dissipated, Mr. Marshall still suffers from emotional injuries.

On May 23, 1997, Officer Hunter filed a charge of second-degree assault against Plaintiff. Plaintiff was ultimately acquitted. Plaintiff was also subject to two disciplinary actions for the incident. In the first adjustment hearing held on May 27, 1997, the hearing officer found that Plaintiff was not guilty. In the second adjustment hearing held two days later, the hearing officer dismissed the case.

### II. DISCUSSION

#### A. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judg-

---

1. According to Plaintiff, he accidentally cut his arm on a metal drawer. According to Defendants, the wound was self-inflicted.

ment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Rather, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.,* 477 U.S. at 317, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

**B.** *42 U.S.C. § 1983—Eighth Amendment*

**1.** *Excessive Force*

■ Excessive force claims of prisoners are analyzed under the Eighth Amendment as applied to the states through the due process clause of the Fourteenth Amendment. *See generally Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Still, in passing the Prisoner Litigation Reform Act (PLRA), Congress intended to alter the means by which prisoners may vindicate their civil rights in federal court under § 1983. *See generally Zehner v. Trigg,* 133 F.3d 459, 460 (7th Cir.1997). The PLRA states, in pertinent part, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In the absence of a statutory definition for "physical injury," the Fifth Circuit has held that "the well established Eighth Amendment standards guide[s][the] analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering." *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (finding sore, bruised ear lasting for three days insufficient to raise a valid Eighth Amendment claim for excessive use of force).

■ "To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements." *Stanley v. Hejirika,* 134 F.3d 629, 634 (4th Cir.1998). "First, he must satisfy a subjective requirement that the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992)). This involves resolving the "core

judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. at 998 (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■ "In addition to satisfying the subjective requirement, the inmate must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.' " *Stanley,* 134 F.3d at 634. In determining whether a correctional officer's conduct amounted to excessive force in violation of the Eighth Amendment, courts consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *See, e.g., Whitley,* 475 U.S. at 321, 106 S.Ct. at 1078 (citations omitted).

■ As a preliminary matter, the Fourth Circuit has expressly stated that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an excessive force claim if his injury is *de minimis.*" *Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994). The medical records of Plaintiff taken at the time of the incident show no signs of contusions, fractures, or other injuries consistent with the use of excessive force. The records only indicated the wound to Plaintiff's arm caused by the steel drawer. Several days after the incident, the doctor prescribed medication for a headache. The absence of medical documentation of injuries weighs heavily against a finding of excessive force. *See Stanley,* 134 F.3d at 637–38 (finding constitutionally insignificant injury where medical records did not substantiate prisoner's claims); *Taylor v. McDuffie,* 155 F.3d 479, 483–85 (4th Cir. 1998), *cert. denied,* 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999); *Norman,* 25 F.3d at 1263. Nevertheless, this Court has found that "as a doctrinal matter, if a plaintiff testifies to greater injuries than those reflected in the medical records and his testimony is not contradicted by objective findings in the records, a genuine dispute of material fact would seem to exist." *Sanders–El v. Spielman,* 38 F.Supp.2d 438, 439 (D.Md.1999). However, according to the Plaintiff's own account, his alleged injuries are constitutionally insignificant under *Norman* and *Taylor. See Taylor,* 155 F.3d at 482 (plaintiff "received abrasions on wrists and ankles, slight swelling in the jaw area, [and] tenderness over some ribs"); *Norman,* 25 F.3d at 1261 (persisting pain in thumb as a result of officer hitting inmate with keys). In Plaintiff's deposition, he stated that, as a result of the attack, he suffered from a headache and an abrasion where he was "hit with the keys," "numbness on the top of his head," and swelling knots all over his body. (Marshall Dep. at 54–56, 64.) Plaintiff acknowledges that, outside of the swelling, he had no visible bruises. (*Id.* at 56.) The pain from the knots subsided within a week and a half to two weeks. (*Id.* at 58.) The facial abrasion left no scar. (*Id.* at 60.) "[T]emporary swelling and irritation is precisely the type of injury this Court considers *de minimis.*" *Taylor,* 155 F.3d at 484. "*[D]e minimis* injury can serve as conclusive evidence that *de minimis* force was used...." *Norman,* 25 F.3d at 1262.

■ A prisoner that has sustained a *de minimis* injury may still establish an Eighth Amendment violation under "ex-

traordinary circumstances." "Extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor*, 155 F.3d at 483 (citations omitted). Given the undisputed facts before it, the Court concludes that this case does not present the "highly unusual circumstance[ ]" where the force employed resulted "in an impermissible infliction of pain" or was "of a sort repugnant to the conscience of mankind." *Norman*, 25 F.3d at 1264 n. 4. According to Plaintiff's own account, the officers were initially drawn to his cell by the disruptive banging of the steel drawer against the cell door. A utility squad was required to treat the cut on Plaintiff's arm and transport him to the medical unit by force. During the involuntary transport to the medical unit, he, albeit accidentally, tripped over one guard causing both of them to fall and fell either on or toward Officer Hunter. Given that the squad was called because of Plaintiff's prior resistance to medical treatment, the officers could have reasonably construed the accidental fall as an attack. Plaintiff has failed to adduce evidence that, in hitting him with her keys, Officer Hunter did not believe that she was under attack when Plaintiff fell toward her. "[N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir.1997). Likewise, Plaintiff has presented no evidence to demonstrate that the correctional officers did not apply force in response to the good faith belief that their colleague was in danger. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and

hence unnecessary in the strict sense." *Stanley*, 134 F.3d at 634 (quoting *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078). Thus, the Court concludes that the escorting defendant officers did not employ excessive force in responding to Plaintiff's accidental fall.

▮ As to Officers Odom and Tindal, there is no dispute that neither officer applied any force against Plaintiff. Officer Odom was the shift supervisor and was not even present at the time of the incident. (Marshall Dep. at 101–02.) Plaintiff acknowledges that Officer Tindal did not participate in the physical altercation, but merely taped the escort. (*Id.* at 33.) In the absence of any underlying use of excessive force against the Plaintiff, liability cannot be placed on either Officer Tindal for failing to intervene or Officer Odom as the supervisor. *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 420 (4th Cir.1996). Accordingly, even construing the facts in the light most favorable to the Plaintiff, the Court finds that the Defendants are entitled to summary judgment on his claim of excessive force under the Eighth Amendment.

## C. *Malicious Prosecution*

▮ Plaintiff asserts a claim of malicious prosecution based upon the assault charge brought against him by Officer Hunter. In Maryland, "[a] plaintiff must show the following to establish the tort of malicious prosecution: 1) the defendant instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other then bringing the plaintiff to justice." *Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118, 130 (2000). "'Probable cause means "facts and circumstances"

sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " *Green v. Brooks,* 125 Md.App. 349, 725 A.2d 596, 605 (1999) (citation omitted). "Probable cause does not require evidence sufficient to convict a person but only 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.' " *Alvarez v. Montgomery County,* 147 F.3d 354, 360 (4th Cir.1998).

 Here, the Court finds that Plaintiff has failed to produce sufficient evidence of lack of probable cause to create a triable issue of fact. It is undisputed that the officers were called to escort Plaintiff to the medical unit as a result the wound incurred as he was hitting his cell door with a steel drawer and his refusal to submit to medical treatment. Plaintiff acknowledges that he either fell on or toward Officer Hunter while she was standing in front of the grill. Plaintiff has not produced evidence disputing records indicating that Officer Hunter was injured during the incident. The day after the incident, Officer Hunter filed a charge of assault against Plaintiff. Given the already contentious environment of prisons and the events that had just transpired, the Court believes that Officer Hunter had a reasonable ground to suspect that Plaintiff's inadvertent fall was a physical assault. Thus, the Court finds that the evidence fails to show that Officer Hunter lacked probable cause to charge Plaintiff with assault the day after the incident. Accordingly, the Court grants summary judgment in favor of Officer Hunter on Plaintiff's malicious prosecution claim.

### D. *Civil Conspiracy*

Plaintiff asserts that, through concocting the story of the alleged kicking of Officer Hunter, Officers Odom, Bazemore, Carlton, Johnson, Thomas, Tindal, Hunter, and Hill conspired to have him forcibly restrained and medicated, subjected to disciplinary proceedings, and maliciously prosecuted with second-degree assault. Defendants maintain that they had no personal involvement in the medical decision to restrain and medicate Plaintiff. Further, Defendants assert that the Plaintiff has failed to adduce any evidence of an agreement that could sustain a claim of civil conspiracy under § 1983.

 "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 421 (4th Cir.1996). To meet the "weighty burden to establish a civil rights conspiracy[,]" .... "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle,* 81 F.3d at 421. Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* "Acquiescence can amount to a conspiracy agreement when ... one ... officer watches an open breach of the law and does nothing to seek its prevention." *Hafner v. Brown,* 983 F.2d 570, 578 (4th Cir.1992). Nonetheless, isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment. *See Hinkle,* 81 F.3d at 421–23.

#### 1. *Forced Restraint and Medication*

 As preliminary matter, Plaintiff must produce sufficient evidence to show

that the alleged conspiracy to fabricate the allegations of assault caused some constitutional deprivation. "[T]he decision to administer antipsychotic medication over an inmate's objection comports with due process if the decision was made in the exercise of professional medical judgment and arose in the context of an emergency situation where the inmate posed a danger to himself or others." *Dancy v. Simms*, 116 F.Supp.2d 652, 655 (D.Md.2000). *See Hogan v. Carter*, 85 F.3d 1113 (4th Cir. 1996). Plaintiff alleges that the medical personnel restrained and medicated him based upon the false allegations of assault. However, Plaintiff's medical records indicate that the medical staff observed Plaintiff as agitated, screaming obscenities, and making verbal threats to the officers and staff. The records note that Plaintiff engaged in self-injurious and dangerous behavior. The records indicate that the decision to restrain and medicate Plaintiff was based upon the medical staff's observations of his behavior rather than any allegedly false account given by the correctional officers. Plaintiff has presented no contradictory evidence indicating that the medical personnel relied on these representations in making the medical judgment to restrain and medicate Plaintiff. In the absence of evidence creating a genuine dispute as to whether the emergency medication was the product of the attending physician's professional medical judgment, the Court finds that Defendants are entitled to summary judgment on this ground.

2. *Prison Disciplinary Proceeding Hearings*

■■■ Likewise, Plaintiff must identify some alleged constitutional deprivation resulting from the alleged conspiracy to file false disciplinary charges against him. "The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may

result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d. Cir.1986). Rather, "the prisoner's due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them." *Jones v. Coughlin*, 45 F.3d 677, 679 (2nd Cir.1995). *See Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984) (finding that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) are provided). Plaintiff does not cite any procedural irregularities in either of the adjustment hearings. Furthermore, both of these hearings resulted in favorable rulings to the Plaintiff. Thus, he suffered no adverse effects from the alleged conspiracy. Therefore, the Court finds that Plaintiff has failed to show any constitutional deprivation resulting from the alleged conspiracy to bring false disciplinary charges against him.

3. *Conspiracy to Give False Testimony*

■■■ Plaintiff maintains that the Defendants conspired to give false testimony at the assault trial. "[G]overnment officials who testify at criminal trials are absolutely immune from damages liability based on their testimony." *Lyles v. Sparks*, 79 F.3d 372, 378 (4th Cir.1996) (interpreting *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). "Granting immunity to official witnesses also prevents interference with the performance of their public duties by avoiding costly and time-consuming litigation." *Lyles*, 79 F.3d at 378 (finding government official immune to civil liability, including claim of conspiracy, for allegedly giving false testimony in judicial proceedings).

The Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals have extended this absolute immunity to civil conspiracy claims. *See Franklin v. Terr,* 201 F.3d 1098, 1100 (9th Cir.2000); *Jones v. Cannon,* 174 F.3d 1271, 1289 (11th Cir.1999); *Miller v. Glanz,* 948 F.2d 1562, 1571 (10th Cir.1991); *Wilkins v. May,* 872 F.2d 190, 192 (7th Cir.1989); *Alioto v. City of Shively, Kentucky,* 835 F.2d 1173, 1174 (6th Cir.1987); *Moses v. Parwatikar,* 813 F.2d 891, 892–93 (8th Cir. 1987); *but see Dory v. Ryan,* 25 F.3d 81 (2nd Cir.1994) (finding absolute immunity does not apply to extra-judicial conspiracies to give false testimony); *Malachowski v. City of Keene,* 787 F.2d 704 (1st Cir. 1986) (holding that immunity allowed in *Briscoe* should not extend to conspiracies to present false testimony). The Court finds that reasoning of the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits to be persuasive. As the Tenth Circuit recognized "[a]llowing criminal defendants to seek damages under § 1983 for conspiracy among state witnesses to offer false testimony would give rise to the same systemic concerns noted in *Briscoe.*" *Miller,* 948 F.2d at 1571. "Instead of suing state witnesses for perjured testimony, a defendant could simply transform the perjury complaint into an allegation of a conspiracy to do the same." *Id.* Accordingly, the Court finds that the Defendants are absolutely immune to Plaintiff's claim of civil conspiracy based upon the allegedly false testimony given at the assault trial.

## III. *CONCLUSION*

For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment as to all counts. An Order consistent with this Opinion will follow.