13 F.3d 142
 Robert M. GRAY, suing individually and by his next friend;
Rosemary Gray, his mother, Plaintiffs-Appellants,
v.
Stephen FARLEY; Paul E. Waterson, Sheriff of Mason County,
West Virginia; Delbert Harrison, Sheriff of Putnam County,
West Virginia; Bobby E. Blankenship; William E. Gillispie,
Defendants-Appellees,
and
Raymond Huck, individually, his next friend and/or Estate;
John Does, A through and including J, presently unknown law
enforcement officers employed by Putnam County, West
Virginia; Nationwide Insurance Company; D. Michael Fewell,
Committee for Raymond Huck, Defendants.
Robert M. GRAY, suing individually and by his next friend;
Rosemary Gray, his mother, Plaintiffs-Appellants,
v.
Stephen FARLEY; Paul E. Waterson, Sheriff of Mason County,
West Virginia; Delbert Harrison, Sheriff of Putnam County,
West Virginia; Bobby E. Blankenship; William E. Gillispie,
Defendants-Appellees,
and
Raymond Huck, individually, his next friend and/or Estate;
John Does, A through and including J, presently unknown law
enforcement officers employed by Putnam County, West
Virginia; Nationwide Insurance Company; D. Michael Fewell,
Committee for Raymond Huck, Defendants.
 Nos. 92-2584, 92-2585.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1993.
Decided Dec. 30, 1993.
 
 Charles Amos Riffee, II, Caldwell, Cannon-Ryan & Riffee, Charleston, WV, argued, for appellants.
 Stephen Mark Fowler, Cleek, Pullin & Bibb, Charleston, WV, argued (Jeffrey Wakefield, on brief), for appellee Waterson.
 Before WILKINSON, Circuit Judge, SPROUSE, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 SPROUSE, Senior Circuit Judge:
 
 
 1
 Robert Gray was convicted in the Circuit Court of Putnam County, West Virginia, of murdering an off-duty deputy sheriff after Gray's failed attempt at arson. After his conviction, Gray sued law enforcement officers of Putnam and Mason Counties, West Virginia, and other persons, alleging violations of 42 U.S.C. Secs. 1983, 1985, 1986, and 1988, the West Virginia Constitution, and West Virginia law. His claims on appeal stem either directly or indirectly from alleged beatings he received from the officers while in custody.I
 
 
 2
 On August 17, 1989, Gray shot and killed John Janey, an off-duty deputy sheriff of Putnam County, West Virginia, on the property of Raymond Huck in Putnam County. Huck had hired Gray to set fire to his house so Huck could collect insurance benefits from Nationwide Insurance Company ("Nationwide"). Before the shooting, Nationwide discovered Huck's plan and sent Janey, who worked after-hours for Nationwide, to watch Huck's property. Janey saw Gray enter Huck's house and pour gasoline inside. After radioing for assistance, Janey tried to arrest Gray. According to Gray, the attempted arrest resulted in a violent fight. Gray testified in his criminal trial that he shot Janey three times at close range in self-defense as Janey was trying to arrest him.
 
 
 3
 After a chase through the woods, Putnam County officers Stephen Farley and Bobby Blankenship arrested Gray, six miles from Huck's house, for killing Janey. As the officers escorted him to the nearby police cruiser, Officer Farley informed Gray of his Miranda rights. Gray alleges that around this time, he was beaten by Officer Farley and other unidentified officers and that once inside the cruiser, he was struck by a number of other police officers whom he could not identify. In the cruiser, he first told the officers that he had not shot Janey. While traveling to the Putnam County jail, however, he confessed to the killing. The statement was reduced to writing, and Gray signed it at the Putnam County jail. At his criminal trial, he claimed that the statement was coerced by the beatings.
 
 
 4
 For reasons not clear from the record, after he had been arraigned and had given his statement at the Putnam County jail, Gray was transferred to the custody of Mason County Sheriff Paul E. Waterson and transferred to the Mason County jail.[1] Gray claims that he was beaten while exiting the Putnam County jail and beaten again by his escorts, Putnam County Officers Gillispie and Hedrick, after he exited Sheriff Waterson's automobile at the Mason County jail site.
 
 
 5
 Gray further contends that at the Mason County jail, he repeatedly requested medical treatment.[2] The routine health questionnaire completed for Gray upon his arrival at the jail, however, shows that he did not request immediate medical attention. The undisputed evidence also shows that an emergency medical technician at the jail examined Gray and found that he did not require medical assistance. Later that evening, Gray complained that he had a cut at the back of his head and pain in his groin area. In response, the correctional officer checked on Gray every thirty minutes for the rest of the evening and the next day to see if he was responsive. The following morning, jail personnel arranged a doctor's appointment for Gray. On the afternoon of August 18, 1989, Dr. Bakshay Chhibber examined Gray and diagnosed him with a superficial scalp laceration, a urinary tract infection, and a soft tissue injury. For treatment, he prescribed an antibiotic and an anti-inflammatory medication and ordered a urinalysis. On August 28, 1989, after visiting with Gray, Gray's counsel filed a motion for immediate medical examination and treatment. Jail records show that Dr. Chhibber examined Gray again on August 29, 1989. On that date, Dr. Chhibber opined that Gray's urinary tract infection had subsided, that he had a possible allergy to his antibiotic, and that he had a questionable neuritis etiology (numbness in his right hand). On November 7, 1989, Chhibber saw Gray again and treated him for scabies.
 
 
 6
 Gray was indicted and tried on the charge of first-degree murder in the Circuit Court of Putnam County, West Virginia. After a suppression hearing, the state trial judge ruled Gray's inculpatory statement admissible. Gray was convicted of murder after a jury trial, and his conviction was later affirmed by the West Virginia Supreme Court of Appeals.
 
 II
 
 7
 Gray brought this civil action in the federal district court for the Southern District of West Virginia on August 21, 1991, against Nationwide Insurance Company, Huck's estate, Deputy Sheriff Farley, Deputy Sheriff Blankenship, Deputy Sheriff Gillispie, Sheriff Delbert Harrison of Putnam County, Sheriff Waterson of Mason County, and other unidentified law enforcement officers claiming that: (1) Nationwide was negligent in employing Janey; (2) Huck failed to maintain safe premises; (3) Farley and Blankenship had Gray under their control when he was beaten after his arrest; (4) Gray was beaten after his arrest by Farley, Gillispie, and other unknown officers; (5) officers, who knew about the beatings, failed to prevent them in violation of Gray's federal and state constitutional rights; (6) the officers present at the beatings conspired to interfere with Gray's civil rights; (7) the shooting and beatings occurred because Harrison and Waterson failed to properly train and supervise their deputies; and (8) Gray received inadequate medical care while in Harrison's custody at the Putnam County jail and while in Waterson's custody at the Mason County jail.
 
 
 8
 Gray voluntarily dismissed all claims against Nationwide. The district court dismissed his claims against Huck's estate, and Gray did not appeal. In granting summary judgment on the failure to train allegation, the district court found a complete lack of evidence concerning inadequate training of the deputies. Gray, on appeal, does not attack that ruling.
 
 
 9
 The district court, in granting summary judgment in favor of the deputies on the excessive force claim, found the complaint against them to be barred under the doctrine of collateral estoppel (the issue having been tried at the suppression hearing in the state circuit court). The district court, granting summary judgment to Sheriffs Waterson and Harrison, found no evidence that Gray was denied adequate medical attention. Gray, on appeal, attacks the grant of summary judgment to Sheriff Waterson, claiming that a genuine issue of material fact existed as to whether Gray received adequate medical attention at the Mason County jail. As to the summary judgment granted to the deputies, Gray contends that "collateral estoppel and res judicata do not operate to bar his ... actions under Section 1983 ... because the issue of excessive force was not distinctly put in issue and directly determined in the criminal prosecution in the State Court."
 
 
 10
 We review the district court's summary judgment ruling on this matter de novo. Foster v. Federal Emergency Management Agency, 984 F.2d 128, 130 (4th Cir.1993). Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1339 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). The nonmoving party is entitled to all justifiable inferences that can reasonably be drawn from the facts. Id. In essence, a summary judgment must be granted if no genuine issue of material fact remains "such that a reasonable jury could [not] return a verdict for a nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1987).
 
 III
 
 11
 (a)
 
 
 12
 The trial court properly granted summary judgment to the officers on the counts alleging conspiracy, failure to intervene, failure to adequately train subordinates, and state law violations. The only support for these claims was the unadorned allegations in the complaint, which are patently insufficient. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting Fed.R.Civ.P. 56(e)) (on summary judgment, an adverse party cannot rest on mere allegations in the pleadings).
 
 
 13
 (b)
 
 
 14
 Similarly, a review of the medical attention received by Gray after his arrest persuades us that the district court correctly granted summary judgment to Waterson and Harrison on Gray's claim of denial of adequate medical treatment. At the time of his medical complaints, Gray was a pre-trial detainee. An injured detainee has a constitutional right to receive needed medical treatment and may not be subjected to any form of punishment, since he has not yet been adjudicated guilty of a crime. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-45, 103 S.Ct. 2979, 2983-84, 77 L.Ed.2d 605 (1983). Under City of Revere, therefore, Gray's medical treatment claim is governed by the Due Process Clause of the Fourteenth Amendment. Id. at 244, 103 S.Ct. at 2983. A pre-trial detainee makes out a due process violation if he shows " 'deliberate indifference to serious medical needs.' " Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). As this court has noted, "no legitimate punitive goal is served by ... unreasonable delay in providing medical treatment where the need for such treatment is apparent." Id.
 
 
 15
 In granting Waterson and Harrison summary judgment, we think the district court properly applied these principles. There was simply little or no evidence of neglect of medical attention at the Putnam County jail. From the time of his arrival at the Mason County jail, Gray's physical condition was monitored. An emergency medical technician found him to be without serious injuries. At the jail, Gray failed to notify jail personnel that he required immediate medical care. Later that evening, he complained of bleeding and the one-half inch long cut on his head was examined. His other complaints were also noted, and the prison officials not only checked on Gray every hour to ensure his health status, but obtained a physician, Dr. Chhibber, to examine him the day after his arrest. Dr. Chhibber diagnosed him as having a superficial scalp laceration, a urinary tract infection, and a soft tissue injury in the abdominal area, and treated him for his injuries. The physician testified that he did not take x-rays, admit Gray to the hospital, or stitch the scalp laceration because he considered these procedures unnecessary. He further testified that his treatment was reasonable and appropriate given Gray's medical history and the findings of his examination. Additionally, he stated that Gray's injuries were not exacerbated by any delayed medical care. Dr. Chhibber's subsequent examinations were consistent with his view that Gray suffered only minor injuries. It is clear from the evidence that Gray's claim fails to meet the deliberate indifference standard as enunciated by the court in Martin, 849 F.2d at 871, and summary judgment was appropriate.
 
 IV
 
 16
 As to the counts alleging that Gray was beaten by the deputy sheriffs, the district court's grant of summary judgment to the defendants under the principles of collateral estoppel was also proper. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
 
 
 17
 In the course of his defense in the state court murder case, Gray moved to suppress his confession, contending that it had been coerced by beatings administered by the Putnam County officers. At the suppression hearing, Gray testified that after he was arrested by Officers Farley and Blankenship, he was struck several times while walking to the cruiser, in the cruiser, and in the Putnam County jail. Gray also testified that he was beaten by defendant Gillispie and others on his way to the Mason County jail and at the jail itself--after he had signed his confession statement. All of the sheriffs and deputy sheriffs who testified denied that these beatings occurred. The subject of the hearing clearly was whether Gray had been beaten, and the state trial judge, in denying the motion to suppress, necessarily found that Gray's confession had not been coerced. The West Virginia Supreme Court of Appeals affirmed that ruling. State v. Gray, 187 W.Va. 283, 286, 418 S.E.2d 597, 600 (1992).
 
 
 18
 A suppression hearing in an earlier state criminal trial collaterally estops the relitigation of the same issues in a Sec. 1983 action if the elements of collateral estoppel are met. Allen, 449 U.S. at 105, 101 S.Ct. at 420. The West Virginia Supreme Court of Appeals in State v. LCS Services, Inc., 186 W.Va. 702, 707-08, 414 S.E.2d 620, 625-26 (1992), set out West Virginia's collateral estoppel theory:
 
 
 19
 Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
 
 
 20
 But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by the way of estoppel rather than by the way of strict res adjudicata.
 
 
 21
 (citation and quotation omitted).
 
 
 22
 In view of the state court suppression proceedings and the state judge's ruling on Gray's contentions, his argument that the issue of excessive force was not litigated is unpersuasive, and we find no error in the district court's grant of summary judgment on that issue.
 
 
 23
 In view of the above, the summary judgment granted to all of the defendants is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Mason County is adjacent to Putnam County
 
 
 [2]
 In his complaint, Gray also asserts that during his short stay at the Putnam County jail, he briefly voiced medical complaints