**Eddie R. BARTRAM, Plaintiff,**

v.

**Sean E. WOLFE, Defendant.**

**No. Civ.A. 2:99–0490.**

United States District Court,
S.D. West Virginia.

July 12, 2001.

Roger D. Forman, Jason E. Huber, Forman & Crane, Charleston, West Virginia, for plaintiff.

Jeffrey K. Phillips, Michael D. Mullins, Jill D. Helbling, Steptoe & Johnson, Charleston, West Virginia, for defendant.

### MEMORANDUM OPINION AND ORDER ADOPTING PROPOSED FINDINGS AND RECOMMENDATION

HADEN, Chief Judge.

This action was previously referred to the Honorable Mary Stanley Feinberg, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendation (PF & R) pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge recommends denying Defendant's motion for summary judgment and setting the case for trial. Defendant has objected and Plaintiff has responded.

Plaintiff alleges Fourth and Fifth Amendment claims arising out of his arrest and detention on state charges. The factual background is adequately discussed in the PF & R and is not restated here. In sum, the Magistrate Judge concluded the two claims survived a summary judgment motion. The Fourth Amendment claim is based on excessive force arising

out of Defendant allegedly punching Plaintiff prior to transporting him to the Detachment. The Fifth Amendment claim is based on the alleged beating and threats that occurred at the Detachment, some of which were accompanied by an official request for a confession to criminal wrongdoing.

## I. DISCUSSION

### A. The Fifth Amendment Claim

Defendant asserts several arguments seeking judgment as a matter of law on the Fifth Amendment claim. He first asserts collateral estoppel, relying on prior state criminal proceedings relating to the Plaintiff. Defendant relies upon *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Gray v. Farley*, 13 F.3d 142 (4th Cir.1993). Defendant asserts Plaintiff may not assert a Fifth Amendment claim because "Congress did not intend, in its enactment of 42 U.S.C. § 1983, to allow *relitigation of issues decided after a full and fair hearing* in state court." (Objecs. at 5 (emphasis added)).

By his own statement of the governing standard, Defendant necessarily concedes the constitutionality of Plaintiff's custodial interrogation must have been actually litigated in the prior state criminal proceedings for the bar to apply. Recent case law appears to impose the same requirement. Indeed, both *Allen* and *Gray* involved federal civil rights claims based on search and seizure issues previously determined on the merits at a formal suppression hearing. *See Allen*, 449 U.S. at 91, 101 S.Ct. 411; *Gray*, 13 F.3d at 146.[1] In contrast to the circumstances in *Allen* and *Gray*, however, Defendant musters only speculation:

> During his deposition, the plaintiff swore that he had testified during the criminal trial that Trooper Wolfe beat him during his arrest and at the detachment. Such claim was *apparently* rejected as the plaintiff was convicted of maliciously wounding his wife. Therefore, *if any evidence was elicited* regarding a confession by the plaintiff, the criminal trial court *must have determined* that the evidence was obtained voluntarily.

(Objecs. at 6 (emphasis added)). The Court is unwilling to dismiss the Fifth Amendment claim on collateral estoppel grounds on such a vague and uncertain basis. *See Smith v. Garrett*, 586 F.Supp. 517, 522 (N.D.W.Va.1984) ("Without these crucial pieces of information, the Court cannot be certain of the issues necessarily decided by the jury's guilty verdict, and cannot properly apply collateral estoppel theory to plaintiff's civil rights claims."). Defendant has not demonstrated the constitutionality of Plaintiff's custodial interrogation was actually litigated in the state criminal proceedings.[2]

---

1. The Court is aware of other authority, such as *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir.1981). In *Cramer*, the plaintiff "did not object [in his state case] to the evidence derived from the search or move to suppress it at his trial in the Prince George County District Court. He therefore waived any challenge to the constitutionality of the search." *Id.* The case is distinguishable factually from the instant matter.

2. Defendant's argument based on *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), likewise fails. *Heck* presented "the question whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Id.* at 479, 114 S.Ct. 2364. No such issue is presented here. *Heck* is thus inapposite. A judgment in Plaintiff's favor would not necessarily imply the invalidity of his state conviction and sentence.

Collateral estoppel does not apply for another reason. No confession was apparently obtained from Plaintiff during the beating. It is thus unclear how suppression of any such statement could have been an issue in, or otherwise affected, the state criminal proceeding. The beating Plaintiff suffered during his custodial interrogation bore no fruit, had little if any impact on the state criminal prosecution, and the state and federal cases simply appear cut from two separate cloths. Issue preclusion is thus inappropriate.

 Defendant next asserts there can be no Fifth Amendment violation because no incriminating statements were obtained from Plaintiff and none were consequently used against him at trial. A Due Process Clause claim, however, does not appear to hinge on the elicitation, or successful introduction at trial, of inculpatory statements. *See Gray v. Spillman*, 925 F.2d 90, 91 (4th Cir.1991) (finding a claim in a custodial interrogation setting even where the incriminating statement was not used at trial and stating "It has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth *and fourteenth* amendments of the Constitution") (emphasis added). *But see Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir.1997) (en banc) (stating "Courts have not found Fifth Amendment viola-

tions where no statements whatsoever were made.").

 Defendant next asserts the claim is, in actuality, a Fourteenth Amendment claim subject to dismissal under *Riley*. Defendant is correct a Fourteenth Amendment Due Process claim is at issue rather than a Fifth Amendment violation. *See Riley*, 115 F.3d at 1166 ("the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment"). He is incorrect, however, in asserting *Riley* requires Plaintiff to show he suffered more than a *de minimis* injury on these facts.[3]

As the Magistrate Judge correctly recognized, *Riley* does not state an always-prevailing rule. As noted *supra*, our Court of Appeals stated as early as 1991 in *Gray* that "It has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution." *Gray*, 925 F.2d at 93 (stating also "The existence of an interrogee's physical injuries is relevant in assessing the amount of actual damages; it is not a prerequisite to suit.").

Although the continuing reliance on *Riley* and *Gray* appears to defy explanation at times, both cases remain good precedent.[4] In the end, the Court deems the

---

Defendant also asserts a Fifth Amendment claim was never pled. While Plaintiff is now represented by counsel, the complaint was drafted *pro se*. As such, it is entitled to a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). Indeed, the standard civil rights claim form executed by Plaintiff specifically admonished him to "not give any legal arguments or cite any cases or statutes." Compl. ¶ 4, 5. A Fifth Amendment claim can be fairly construed to arise out of the Complaint's allegations.

**3.** In *Riley*, the en banc Court of Appeals stated:

> But without a *de minimis* threshold, every "least touching" of a pretrial detainee would give rise to a section 1983 action under the Fourteenth Amendment....
> An injury need not be severe or permanent to be actionable under the Eighth Amendment, but it must be more than *de minimis*. We think this same rule applies to excessive force claims brought by pretrial detainees.

115 F.3d at 1166.

**4.** The distinctions between *Riley* and *Gray* aside, however, the Court is not yet satisfied

facts and circumstances of *Gray* closer to the present facts than *Riley,* and will apply the former here, with the necessary modifications to *Gray* that can be sifted from *Riley.* Plaintiff's Fourteenth Amendment claim survives summary judgment under *Gray.*

In sum, the Court concludes the thorough PF & R treats the *Riley* issue appropriately. In addition to the Magistrate Judge's careful and reasoned analysis, the Court's perception of this difficult area parallels the crisp observations of Senior Judge Hamilton in his concurring opinion in *Riley:*

> The court holds that excessive force claims of state pretrial detainees are not to be governed by the Fourth, Fifth, or Eighth Amendments, but rather the Due Process Clause of the Fourteenth Amendment. The court further holds that excessive force claims of state pretrial detainees, based on state conduct occurring outside the context of a custodial interrogation, are subject to the *de minimis* injury standard set forth in *Norman v. Taylor,* 25 F.3d 1259 (4th Cir.1994) (en banc). *The court, however, leaves intact the principle established in Gray v. Spillman,* 925 F.2d 90, 93–94 (4th Cir.1991), *that a state pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment are violated if he is beaten or sufficiently threatened during the course of a*

*custodial interrogation.* Dorton's assault on Riley did not occur during a custodial interrogation; therefore, Riley has no claim under the Due Process Clause of the Fourteenth Amendment unless his injuries were more than *de minimis.*

*Riley,* 115 F.3d at 1169 (Hamilton, J. concurring) (emphasis added).[5] Plaintiff's version of the facts at the Logan Detachment suggests a violation of his Fourteenth Amendment Due Process rights, constitutional rights that were clearly established in August, 1998. The Fourteenth Amendment claim, as recast here, will proceed to trial.

## B. The Fourth Amendment Claim

Defendant raises the *de minimis* injury requirement with respect to the Fourth Amendment claim as well. He asserts there was no more than a *de minimis* injury when he punched Plaintiff in the face at the Bartram house and that no constitutional violation thus occurred.[6] Defendant cites *Preast v. McGill,* 65 F.Supp.2d 395 (S.D.W.Va.1999) and *Krider v. Marshall,* 118 F.Supp.2d 704 (S.D.W.Va. 2000). The facts in *Preast,* however, are wholly distinguishable from the unprovoked and unnecessary punch alleged by Plaintiff. Also, to the extent *Krider* is relevant, it was recently reversed. Among other things, the Court of Appeals appears to have found significant Krider's allega-

---

Plaintiff suffered only *de minimis* injuries as a matter of law. Injury can be a fluid concept. One popular definition describes it as "Hurt or loss caused to or sustained by a person or thing; harm, detriment, damage . . . ." Oxford English Dictionary (2nd ed.1989).

5. Senior Judge Hamilton's views are significant given the close division of the en banc court in *Riley.* Subsequent cases, however, have made the analysis even more difficult. For example, in *Taylor v. McDuffie,* 155 F.3d 479 (4th Cir.1998), a pretrial detainee alleged

he was physically assaulted by a law enforcement officer after he refused to reveal his girlfriend's name. The events, like those here, included a threat with a deadly weapon and punching in the ribs. Nonetheless, the Court of Appeals characterized "tenderness over some ribs" as "clearly *de minimis.*" *Id.* at 484.

6. While the quantum of evidence is not an issue presently, four separate witnesses have testified Defendant gratuitously slapped or punched Plaintiff in the face.

tion the law enforcement officer "*inflicted gratuitous pain* while handcuffing Krider by grabbing his wrists, pulling his arms up into an unnatural position, and forcefully shoving Krider into the side of his vehicle." *Krider v. Marshall*, No. 00–2429, 2001 WL 543226, at *1 (4th Cir. May 23, 2001).

Defendant also asserts qualified immunity. The Court, however, initially questions whether a qualified immunity analysis is even appropriate in this type of situation. *Cf. Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996) ("It is clear ... that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.... It is only when the circumstances themselves *leave room for the exercise of judgment* on the part of the police officer that qualified immunity is appropriate.") (emphasis added).

■ Assuming the propriety of the analysis, however, the Court first concludes that, taken in the light most favorable to the Plaintiff, the facts alleged show the Defendant's conduct violated a constitutional right. *Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). Plaintiff has stated a violation of a constitutional right under the Fourth Amendment to be free from the use of excessive force by law enforcement, namely a gratuitous and unnecessary punch in the face.[7]

Second, the Court must determine whether the right was clearly established at the relevant time. Defendant asserts that "Even if this Court were to rule that there is no requirement of a significant injury to maintain a Fourth Amendment claim, it cannot be said that proposition was 'clearly established' at the time of the incident." Objecs. at 10. That analysis, however, portends a frightening outcome. If the issue were posed in the manner suggested by Defendant, a law enforcement officer would be able to claim immunity if, after having a suspect under control and in custody, his further infliction of gratuitous harm on the suspect did not cause serious injury. That cannot be the direction of the law.

Instead, the second operative question under *Saucier* is this: Was it clearly established as objectively unreasonable in August 1998 to punch or otherwise batter a handcuffed suspect who was complying and cooperating with a law enforcement

**7.** Interestingly, *Saucier* seems to take as a given that the focus is on the objective reasonableness of the force used, not the scale of the injury. In *Saucier*, "Respondent's excessive force claim for the most part depend[ed] upon the 'gratuitously violent shove' allegedly received when he was placed" into a police vehicle. *Saucier*, 121 S.Ct. at 2159. Rather than dismissing out of hand the possibility of a violation of a clearly established right, the Supreme Court instead stated:

As for the shove respondent received when he was placed into the van, those same circumstances show some degree of urgency. We have approved the observation that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Ibid.* (citations omitted). *Pushes and shoves, like other police conduct,*

*must be judged under the Fourth Amendment standard of reasonableness.*

In the circumstances presented to this officer, which included the duty to protect the safety and security of the Vice President of the United States from persons unknown in number, neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did, nor are we aware of any such rule. Our conclusion is *confirmed* by the uncontested fact that the force was not so excessive that respondent suffered *hurt* or injury. *Id.* at 2160 (emphasis added). Cognizant of the fact *Saucier* was decided long after the events in this case, the Supreme Court's observations are nonetheless thought provoking on the role of a *de minimis* injury in the calculus of objective reasonableness.

officer's instructions? Although one has difficulty finding a case directly on point for that proposition, this is one of those rare instances where the question ineluctably leads to an affirmative answer. *Cf. Better Government Bureau, Inc. v. McGraw,* 904 F.Supp. 540, 552 n. 16 (S.D.W.Va.1995) (" 'the absence of [many] reported case[s] with similar facts demonstrates nothing more than widespread compliance with well-recognized constitutional principles.' ") (quoting *Eberhardt v. O'Malley,* 17 F.3d 1023, 1028 (7th Cir. 1994)).

In sum, the Court has no difficulty concluding a reasonable officer would have concluded the law forbade him from gratuitously punching a handcuffed and otherwise cooperative and compliant suspect. The conduct alleged here is not so much a reasonable mistake concerning the amount of force required, but rather a purposeful and gratuitous attack on a suspect who was neither resisting arrest nor posing a threat to anyone's safety.

The Magistrate Judge's PF & R as supplemented is appropriate on the Fourth Amendment claim. Following this *de novo* review, the Court concludes the objections are not meritorious. Accordingly, the Court accepts and incorporates herein the Magistrate Judge's PF & R as supplemented.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record. The Clerk is further directed to post a copy of the Magistrate Judge's PF & R and this Memorandum Opinion on the Court's website at www.wvsd.uscourts.gov.

### PROPOSED FINDINGS AND RECOMMENDATIONS

FEINBERG, United States Magistrate Judge.

By Amended Standing Order entered October 6, 2000, the District Court referred this civil action to this Magistrate Judge for submission of proposed findings and recommendation for disposition (document # 74). Now pending before the court is the Motion for Summary Judgment filed by defendant Wolfe (# 77). The motion is supported by a memorandum with exhibits ("Def.Mem.," # 78). Plaintiff, by counsel, filed a response in opposition ("Pl.Resp.," # 80) with exhibits, and Defendant filed a Reply (# 81) with exhibits.

On June 11, 1999, Plaintiff, proceeding *pro se,* filed a civil rights complaint against Defendant, a member of the West Virginia State Police, claiming that Plaintiff was arrested and beaten by Defendant at Plaintiff's home, and at the Logan Detachment of the State Police. Plaintiff seeks damages and removal of Defendant from the State Police. Plaintiff's complaint also named Colonel Gary Edgell, then Superintendent of the State Police, as a party defendant. By Order entered January 4, 2000, the District Court dismissed Plaintiff's claim against defendant Edgell for failure to state a claim against him as a supervisor of defendant Wolfe (## 15, 34).

Plaintiff's Complaint alleges as follows (spelling and punctuation corrected):

On or about August 13 [sic; August 12], 1998, W.V. State Trooper S.E. Wolfe arrived at my home concerning a domestic report from the previous day. When he knocked, I answered the door, he handcuffed me and set me down on the steps. He went in the house to question my wife, Amanda Bartram. He came back out to the steps and hit me on the side of my head. My mom, Alta Bartram, and Ruth Cook were standing beside me. He then placed me in the cruiser in the back seat. He put my wife in the front seat, and telling me

not to talk to my wife or he would beat the shit out of me. I remained silent. When we arrived at the Logan State Police headquarters, he first took my wife in and then came back for me. He asked if I beat my wife. I told him I wanted a lawyer. He said, "I've got your lawyer," and hit me in the face. He took me inside to the far back room. He started punching me in the ribs while I was still handcuffed. He then put his gun to my chin, telling me to leave Logan or he would shoot me and put my fingerprints on his gun and claim I tried to take his gun, so he shot me. He then took his badge and gun belt off and unhandcuffed me, saying, "Let's fight." I said, "No." He left the room to talk to my wife. When he returned, he said, "You beat that girl and she won't tell it." He grabbed me by the throat, choking me, saying, "Tell me you beat your wife." He said he could hit me where no one could tell it and get away with he. He continued to beat me.

I was at the headquarters from 11:30 until 4:40 p.m. When I arrived at the Magistrate Office, Donald Muncey came to go my bond and the state trooper met him at the elevator, telling him that my wife was about to die at the hospital, and if she did, he was filing murder charges. He told Mr. Muncey this so I wouldn't get bond. My wife was at the headquarters. On the way to jail, he told me my wife wasn't leaving the headquarters until she signed a statement on me and that she still wouldn't sign it. This was an unprovoked and brutal assault by this officer, and also before my 3 young children who are under the age of five. (Complaint, # 3, at 4 and attached page.) Plaintiff seeks $1,000,000.00 and removal of defendant Wolfe from duty permanently. *Id.*, at 5. Also attached to the complaint are hand-written statements from Ruth Cook, Amanda Bartram (Plaintiff's wife), and Alta Bartram (Plaintiff's mother).

By Order entered January 26, 2000, U.S. Magistrate Judge Jerry D. Hogg granted Plaintiff's motion for appointment of counsel (# 38). Roger Forman and Jason E. Huber undertook representation of Plaintiff.

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the burden of establishing that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. If the moving party meets this burden, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has met this burden, the burden shifts to the adverse party to produce sufficient evidence for a jury to return a verdict for that party. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. The judge's

inquiry, therefore, unavoidably asks "whether reasonable jurors could find, by a preponderance of the evidence, that the [nonmoving party] is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505.

> [The] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "[I]f the factual context renders [Plaintiff's] claim implausible . . . [Plaintiff] must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348.

"[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they

may seem)." *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980); *see also, Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985); *Scott v. Greenville County*, 716 F.2d 1409, 1411 (4th Cir.1983).

*Incident on the Porch*

There are two separate allegations of use of excessive force by Defendant against Plaintiff: on the porch of Plaintiff's house, and at the Logan Detachment. When Plaintiff was sitting on the porch steps, hand-cuffed, he was in the process of being placed under arrest. As such, his claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The issue is whether the officer's actions, in light of the facts and circumstances confronting him, are "objectively reasonable," without regard to his underlying intent or motivation. 490 U.S. at 397, 109 S.Ct. 1865.

There are disputed facts concerning the events of August 12, 1998. The facts which are *not* in dispute are these:

> Amanda Bartram's mother, Debbie Peckens, called the Logan County Detachment of the West Virginia State Police and told a dispatcher that she believed that her daughter was being physically abused by Plaintiff, Amanda's husband. (Def.Mem., Ex. A, Wolfe Depo., at 31–32.) Ms. Peckens was "frantic." *Id.* The dispatcher transferred the call to defendant Wolfe. *Id.*, at 32. The dispatcher's notes indicate that Ms. Peckens stated that "Eddie Bartram beat Amanda up real bad and won't let her out of the house." *Id.*, at 36. Ms. Peckens told Wolfe that she had just spoken on the phone with Amanda Bartram, she could hear her daughter screaming and cursing, she could hear Eddie Bartram yelling at Amanda, and then the phone went dead. *Id.*, at 33.

Trooper Wolfe tried to call the Bartram residence but could not get through. *Id.*, at 34. Trooper Wolfe then drove to the Bartram residence in a cruiser, which took about ten minutes. *Id.*, at 34, 39. Two male individuals were outside the Bartram residence; trooper Wolfe asked them to leave and they did so. *Id.*, at 40. Trooper Wolfe approached the residence, a mobile home, knocked on the door, and Plaintiff answered. *Id.*, at 42. Wolfe could see Amanda Bartram holding a rag to her face, which was bruised, swollen and bleeding. *Id.*, at 44. Plaintiff had thrown a rock at Amanda and hit her in the face. (Def.Mem., Ex. B, photographs; Ex. C, Pl.Depo., at 36.) Plaintiff was ultimately convicted of malicious wounding. Three small children were in the living room of the mobile home. (Def.Mem., Ex. A, Wolfe Depo., at 42, 44.) Trooper Wolfe asked Plaintiff to step outside on the porch and Bartram did so. *Id.*, at 46. Wolfe hand-cuffed Bartram and instructed him to sit on the porch, which Bartram did. *Id.* Defendant Wolfe touched Plaintiff's face. Plaintiff did not sustain an injury which required medical treatment as a result of Trooper Wolfe touching his face. Alta Bartram, Plaintiff's mother, told Defendant that she intended to file a complaint against Wolfe. *Id.*, at 55.

Other facts concerning the incident on the porch are in dispute. Those facts which are contained in Plaintiff's exhibits and which contradict Defendant's version of events are as follows:

Plaintiff was sitting quietly, hand-cuffed, on the mobile home porch while Trooper Wolfe interviewed Amanda Bartram. (Def.Mem., Ex. C, Pl.Depo., at 33.) Plaintiff's mother, Alta Bartram, and a friend, Ruth Cook, arrived. *Id.*, at 35. Trooper Wolfe emerged from the mobile home, remarked that Plaintiff had beat his wife, and, using his right hand, hit/slapped Plaintiff on the left side of his face (it is not clear whether Wolfe's hand was open or closed). *Id.*, at 34–35; Def.Mem., Ex. E, Cook Depo., at 10. Amanda Bartram yelled at Trooper Wolfe to stop beating her husband. (Def.Mem., Ex. A, Pl.Depo., at 36.)

Defendant Wolfe has asserted the defense of qualified immunity. "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). Following *Wilson*, the court will consider first whether Plaintiff has alleged the deprivation of his Fourth Amendment right to be free from excessive force during the course of his arrest.

Defendant Wolfe argues that "because the plaintiff was not injured when Trooper Wolfe allegedly slapped him, the plaintiff cannot establish a violation of his Fourth Amendment rights." (Def.Mem., at 7.)

Plaintiff responds that the lack of a serious injury is not a defense to a Fourth Amendment violation, and that Defendant's conduct was objectively unreasonable. (Pl.Resp., at 5–12.)

Defendant's Reply concedes that the Fourth Circuit has not published an opinion which holds that an arrestee who claims that he was unreasonably seized must show more than a *de minimis* injury. (Reply, at 4.) Defendant suggests that two Fourth Circuit cases, and several District Court cases, considered the degree of harm inflicted on an arrestee in determin-

ing the validity of a Fourth Amendment claim. The undersigned disagrees.

In *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir.1988), the Court stated that "[t]he right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." While injuries inflicted during the course of an arrest may be evidence of the amount of force used, the injuries are not the standard by which to judge the amount of force which is reasonable. Defendant's argument suggests that a peaceful person who offers no resistance to an officer during an arrest and who is repeatedly slapped and hit would have no claim against the officer for excessive use of force, based merely on the lack of serious injuries. The Fourth Amendment does not countenance gratuitous assaults on citizens who are cooperative with law enforcement officers executing a valid arrest.

■ Similarly, Defendant's citation to *Carter v. Morris*, 164 F.3d 215 n. 3 (4th Cir.1999), is unpersuasive. That footnote merely recited that the plaintiff's complaints of excessive force were supported by minimal evidence, such as an officer pushing her legs as she got into a cruiser. It is well settled that "[n]ot every push and shove ... violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 396–97, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028 at 1033 (2d Cir.1973)). The calculus of reasonableness is *not* based on how much injury is inflicted on the arrestee. The Fourth Amendment protects citizens from unreasonable seizure during the court of an arrest. *Bibum v. Prince George's County*, 85 F.Supp.2d 557, 563 (D.Md.2000). "While the degree of injury inflicted may be evidence of the amount of force used in effecting the arrest, and thus the reasonableness of the seizure, it is never determinative of the question whether there has been a constitutional violation." *Id.*

At this stage of the proceedings, the disputed facts must be considered in the light favoring Plaintiff, which is that Trooper Wolfe approached Bartram while he was sitting quietly, in hand-cuffs, that Wolfe accused Bartram of beating Amanda, and that Wolfe hit Bartram in the face.

■■■ The court proposes that the District Court find that an unprovoked battering of a hand-cuffed arrestee who is not resisting the arrest, who is sitting quietly, and who poses no immediate threat to the trooper's safety, is objectively unreasonable, pursuant to *Graham v. Connor*, 490 U.S. at 396–97, 109 S.Ct. 1865. The District Court should further find that Plaintiff has alleged the deprivation of a constitutional right which was clearly established at the time of the alleged violation (*Graham* was decided in 1989), and that defendant Wolfe is not entitled to the defense of qualified immunity with respect to the incident on the porch. Finally, the District Court should find that there are genuine issues as to material facts (whether Plaintiff was sitting quietly or yelling threats to Amanda, whether Plaintiff was interfering with Defendant's investigation, whether Plaintiff posed a threat to Defendant, Amanda, or his children) and that Defendant is not entitled to judgment as a matter of law.

It is anticipated that the Supreme Court will soon address the interplay of qualified immunity and the reasonableness test under the Fourth Amendment. *See Katz v. United States*, 194 F.3d 962 (9th Cir.1999),

*cert. granted sub nom. Saucier v. Katz,* —— U.S. ——, 121 S.Ct. 480, 148 L.Ed.2d 454 (2000), in which the questions presented in the Petitioner's Brief are:

1. Whether, in a case alleging the use of constitutionally unreasonable force, the test for qualified immunity and the reasonableness test under the Fourth Amendment are identical, such that a finding of unreasonable force under the Fourth Amendment necessarily precludes the officer from being entitled to qualified immunity.

2. Whether the court of appeals erred in concluding that petitioner Saucier's use of force to detain respondent, which consisted of carrying respondent from the crowd to a waiting van and pushing him inside without injuring him, so clearly exceeded the amount of force permitted by the Fourth Amendment as to warrant denial of qualified immunity.

2001 WL 40985.

*At the Logan Detachment*

The facts which are *not* in dispute are as follows:

> Trooper Wolfe placed Plaintiff in the back seat of the cruiser, and directed Amanda Bartram to sit in the front seat of the cruiser. (Def.Mem., Ex. A, Wolfe Depo., at 58–59; Ex. C, Pl.Depo., at 38–39.) Defendant did not hit Plaintiff on the way to the Detachment.

The events at the Logan Detachment are in dispute. Defendant denies that he hit Plaintiff. (Def.Mem., at 4 n. 2.) The court will present the evidence in a light most favorable to the non-moving party.

In his deposition, Plaintiff testified to the following:

> Upon arrival at the Detachment, Trooper Wolfe took Amanda Bartram inside and returned for Plaintiff. (Pl.Resp., Ex. A, Pl.Depo., at 43–44.) Wolfe approached the cruiser, opened the rear passenger door, and said to Plaintiff, "You beat your wife, didn't you?" *Id.,* at 44–45. When Plaintiff replied that he wished to have a lawyer present during questioning, Wolfe stated, "I've got your fuckin' lawyer," and hit Plaintiff with his fist on Plaintiff's right side. *Id.,* at 43–45. Wolfe grabbed Plaintiff by the handcuffs and pulled him along (Plaintiff had to walk backwards because his hands were cuffed behind his back). *Id.,* at 45–46. When they were in a room inside the Detachment, Wolfe shut the door to the office, again suggested that Plaintiff had beat Amanda, and repeatedly struck Plaintiff in the lower ribs, on both sides, stating that he could hit Plaintiff in places where nobody could tell that Plaintiff had been hit. *Id.,* at 47–48. Wolfe then took his pistol out of his holster, stuck it to Plaintiff's chin, and pushed Plaintiff's head back as far as possible. *Id.,* at 48–49. Wolfe repeatedly urged Plaintiff to state that he had beaten his wife. *Id.,* at 49. Plaintiff had difficulty talking, because the pistol was pressing on his throat, but said "No." *Id.* Wolfe told Plaintiff that if Plaintiff did not leave Logan, Wolfe would shoot him and place Plaintiff's fingerprints on the gun and swear that Plaintiff had tried to take Wolfe's gun. *Id.* Wolfe told Plaintiff to "stay away from Amanda and never be seen around her." *Id.* Wolfe then took off his gunbelt and badge, and removed the handcuffs from Plaintiff, encouraging Plaintiff to fight Wolfe. *Id.,* at 51–53. Plaintiff refused. *Id.,* at 53. Wolfe hit Plaintiff once or twice more. *Id.* Wolfe then handcuffed Plaintiff to the chair. *Id.,* at 55. After approximately half an hour, Wolfe transported Plaintiff to the courthouse. *Id.,* at 62–64.

Plaintiff's mother testified that Plaintiff told her and Johnny Mendez at the court-

house that he "had been beat," and that Plaintiff was holding his ribs. (Pl.Resp., Ex. D, Alta Bartram Depo., at 27–28.)

Photographs of Plaintiff taken at the Southwestern Regional Jail on August 12, 1998, do not show any obvious injury to his face. (Def.Mem., Ex. F2.) Plaintiff reported to the receiving/screening/health assessment officer at the Jail that his "ribs hurt;" the officer noted "left side guarding." (Def.Mem., Ex. F1, at 1.)

On August 15, 1998, Plaintiff presented at the emergency room of Thomas Memorial Hospital at South Charleston, WV, complaining of left rib pain, resulting from an altercation on August 12. (Def.Mem., Ex. G, Dr. Stollings' Depo., at 6). Plaintiff told Dr. Stollings that he had no bruising on August 12. *Id.* He made no complaints about an injury to his head. *Id.,* at 7. X-rays of Plaintiff's chest and left ribs were negative. *Id.,* at 13–14. Dr. Stollings' impression was that Plaintiff had a left rib contusion. The doctor's dictated notes indicated that there was no visible evidence of a bruise. *Id.,* at 19. Dr. Stollings testified that "the injury was probably not real severe, if, in fact, this happened on the 12th and I saw him on the 15th and there was no evidence of bruising anywhere." *Id.,* at 18.

Defendant argues that, assuming Plaintiff's version of the events at the Logan Detachment are true (which Defendant denies), Plaintiff's injuries are *de minimis* and that Defendant is accordingly entitled to summary judgment. (Def.Mem., at 11–14.) Defendant also asserts the defense of qualified immunity. (*Id.,* at 15.)

Plaintiff responds that Defendant's conduct in repeatedly hitting Plaintiff at the Logan Detachment should be considered repugnant to the conscience of mankind, invoking that exception to the *de minimis* injury rule in excessive force cases. (Pl. Resp., at 12–13.) He also contends that the Fourth Circuit's *de minimis* rule is merely one factor, not the determining factor, in excessive force cases, according to *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Defendant's Reply insists that Plaintiff's injuries are *de minimis,* cites to *Riley* and *Taylor,* and asserts that the minor extent of injuries ends the inquiry. (Reply, at 1–3.)

It is not clear when an arrestee becomes a pretrial detainee. In *Riley v. Dorton,* 115 F.3d 1159, 1161 (4th Cir.1997), the Fourth Circuit rejected the concept of a "continuing seizure" and noted that the critical events occurred two hours and ninety miles from the time and place of Riley's arrest. *Riley* also rejected limiting Fourth Amendment coverage to the period the suspect remains with the arresting officer. 115 F.3d at 1163. *Riley* did not, however, establish a simple rule to determine when Fourth Amendment protection ends.[8] Was Plaintiff an arrestee only during the process of hand-cuffing him on his porch? *Riley* indicates that

> the Fourth Amendment thus applies to the "initial decision to detain an accused," *Bell [v. Wolfish],* 441 U.S. [520] at 533–34, 99 S.Ct. [1861] at 1871[, 60 L.Ed.2d 447] [(1979)], not to the conditions of confinement after that decision has been made. Indeed, in defining the nature of "seizure" in the context of an arrest, the Supreme Court quoted

---

8. A simple rule would be that a person is an arrestee until the person has made an initial appearance before a judicial officer, and then the person becomes a pretrial detainee. Such a rule would have the added benefit of dis-

couraging the use of force and intimidation by police officers in the obtaining of a statement from an accused who has not appeared in court and has not obtained counsel.

*Thompson v. Whitman*, 18 Wall. 457, 471, 21 L.Ed. 897 (1873), for the proposition that "[a] seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991).

115 F.3d at 1163. This suggests that courts must first determine when the officer decides to detain an accused before deciding when Fourth Amendment protection ends.

If *Riley* stands for the proposition that a person is an arrestee only when an officer decides to detain, and that the Fourth Amendment applies only to the single act of the arrest, then it follows that Plaintiff was a pretrial detainee when he arrived at the Logan Detachment.

The applicable legal standard for cases claiming use of excessive force during pretrial detention is found in *Riley v. Dorton, Taylor v. McDuffie*, 155 F.3d 479 (4th Cir.1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999), and *Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). In *Riley*, a case which (according to the majority opinion) did *not* involve an allegation of a violation of the Fifth Amendment's privilege against self-incrimination, the Fourth Circuit joined the Fifth, Seventh, and Eleventh Circuits in holding that "the Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." 115 F.3d at 1164. The Court held that "excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." 115 F.3d at 1166. If Plaintiff is to prevail, he must show that Defendant "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "The proper inquiry is whether the force applied was 'in a good

faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Taylor*, 155 F.3d at 483 (quoting *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078). In addition, Plaintiff must show that the injuries resulting from the force applied were more than *de minimis*. *Taylor*, 155 F.3d at 483; *but see Watford v. Bruce*, 126 F.Supp.2d 425 (E.D.Va.2001).

Plaintiff argues that the court should apply the *Hudson v. McMillian* rule. In that case, the Supreme Court held, in the Eighth Amendment prison context, that

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. *** The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' " *** [T]he blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes.

503 U.S. at 9–10, 112 S.Ct. 995. The Fourth Circuit has held that the claims of a pretrial detainee are not properly analyzed under the Eighth Amendment, because the Eighth Amendment applies only after conviction and sentence. *Riley v. Dorton*, 115 F.3d at 1166.

In *Riley*, the Fourth Circuit rejected the detainee's argument that detective Dorton was violating his Fifth Amendment privilege against self-incrimination. There are

important differences between this case and the facts in *Riley*. For example, Riley was not questioned about his crimes by detective Dorton; here Plaintiff contends that defendant Wolfe repeatedly accused and questioned him about his beating of Amanda Bartram while hitting Plaintiff and pressing a gun to his throat. In fact, the first time that Wolfe allegedly hit Plaintiff upon arrival at the Detachment was when Plaintiff stated that he wished to speak with a lawyer. These disputed facts strongly suggest that *Gray v. Spillman*, 925 F.2d 90 (4th Cir.1991), provides the appropriate standard, not *Riley*.

In *Gray*, the Fourth Circuit noted

[i]t has long been held that beating and threatening a person in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution. [Citations omitted.] The suggestion that an interrogee's constitutional rights are transgressed only if he suffers physical injury demonstrates a fundamental misconception of the fifth and fourteenth amendments, indeed, if not our system of criminal justice. ·

925 F.2d at 93. *Gray* also held that "[t]he existence of an interrogee's physical injuries is relevant in assessing the amount of actual damages; it is not a prerequisite to suit. [Citations omitted.] Moreover, the plaintiff might prove actual damages even in the absence of physical injury." 925 F.2d at 93–94. Thus Defendant cannot rely on an argument that *de minimis* injuries result in judgment in his favor.

The court proposes that the District Court find that Plaintiff's version of the facts at the Logan Detachment suggest a violation of his Fifth Amendment privilege against self-incrimination, a constitutional right which was clearly established in August, 1998. The District Court should further find that there is a genuine issue as to the material facts and that Defendant is not entitled to judgment as a matter of law.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the District Court deny Defendant's Motion for Summary Judgment, and set the action for pretrial conference, final settlement conference, and trial.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED,** and a copy will be submitted to the Honorable Charles H. Haden II, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, and the holding in *Mullins v. Hinkle*, 953 F.Supp. 744 (S.D.W.Va.1997), Goodwin, J., the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of this "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir.1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984). Copies of such objections shall be served on opposing parties, Chief Judge Haden, and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and

to mail a copy of the same to counsel of record and to Chief Judge Haden.